# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:13-cv-00153-JEO |
| ) | |
| $83,274.51 SEIZED FROM BBVA ) | |
| COMPASS BANK ACCOUNT ) | |
| NUMBER XXXX9194, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the court on Claimant Michael W. McClure's Motion to Dismiss and for Return of Seized Funds. (Doc. 9). Claimant's motion seeks the dismissal of the Government's verified complaint for forfeiture *in rem*, which alleges that McClure structured withdrawals from his account to avoid the mandatory Currency Transaction Reporting[1] (hereafter "CTR") requirements for financial institutions. (Doc. 1). The motion is fully briefed and ripe for review. (*See* docs. 9, 11, 12, 13, and 14). For the reasons stated below, Claimant's motion is due to be granted in part and denied in part.

## I. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

On August 27, 2012, agents of the Internal Revenue Service, Criminal Investigations ("IRS-CI") seized $83,274.51 from BBVA Compass Bank account number xxxx9194 ("Defendant Funds"), pursuant to 31 U.S.C. § 5317 as property allegedly involved in or traceable to a structuring offense in violation of 31 U.S.C. § 5324. (Doc. 1 at ¶¶ 4, 18). On January 23,

---

[1] Under 31 U.S.C. § 5313, financial institutions are required to report when persons are involved in transactions using United States coins or currency in amounts proscribed by regulation. These reports are commonly called the "Currency Transaction Reports." *See, e.g.*, *U.S. v. Cure*, 804 F.2d 625, 627 (11th Cir. 1986).

2013, the Government filed a verified complaint for forfeiture *in rem* against the Defendant Funds, alleging that Claimant illegally structured thirteen cash withdrawals from account number xxxx9194 between August 24, 2011, and January 18, 2012. (Doc. 1 at ¶ 11). Specifically, the Complaint alleges that Claimant funded account number xxxx9194 primarily through checks written to Michael W. McClure from himself or from his other companies. (Doc. 1 at ¶ 12). The Complaint further alleges that Claimant conducted a series of withdrawals whereby he cashed checks from McClure Investments, LLC to "cash" (each check was endorsed by Claimant). (Doc. 1 at ¶¶ 11, 13). These withdrawal transactions were always for amounts of $10,000.00, just below the reporting limit of $10,000.01. (Doc. 1 at ¶¶ 6, 13, 17). On several occasions, Claimant demonstrated a pattern of depositing large sums of money, amounting $20,000.00 to $50,000.00, and then subsequently withdrawing $10,000.00 in separate transactions on the same days. (Doc. 1 at ¶ 11). Additionally, Claimant allegedly told IRS-CI agents that he was familiar with the CTR requirements (doc. 1 at ¶ 15), and that he never conducts currency transactions over $10,000.00 (doc. 1 at ¶ 16). As a result, the Government seized the funds and on January 23, 2013, it filed the instant civil forfeiture action. Claimant filed a verified claim to the Defendant Funds on February 25, 2013 (doc. 7) and a motion to dismiss on February 28, 2013 (doc. 9).

## II. STANDARD OF REVIEW

Parties to civil forfeiture proceedings are the servants of two procedural masters: the FEDERAL RULES OF CIVIL PROCEDURE and the SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS (hereafter "SUPPLEMENTAL RULES"). *United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141, 149 (3rd Cir. 2003). The balancing of the two is struck in favor of the SUPPLEMENTAL RULES, which always apply to

civil forfeiture proceedings. *See id.* (Citing 18 U.S.C. § 983(a)(3)).[2] However, the FEDERAL RULES OF CIVIL PROCEDURE still apply "to the extent that they are not 'inconsistent with' the Supplemental Rules." *$8,221,877.16*, 330 F.3d at 144 (citing SUPP. R.A).

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) provides for dismissal where a party fails to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). This inquiry by the court is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In deciding a 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. City of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue*

---

[2] Section 983 made explicit the "practice of applying the Supplemental Rules to civil forfeiture actions." *$8,221,877.16*, 330 F.3d at 149 n.7.

*Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Robertson v. Johnson*, 376 F.2d 43 (5th Cir. 1967)).

For motions to dismiss in forfeiture actions, the traditional pleading rules are modified by Rule G of the SUPPLEMENTAL RULES, which, along with the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (codified primarily at 18 U.S.C. § 983), set out requirements specific to civil "forfeiture action[s] in rem arising from a federal statute." FED. R. CIV. P. SUPP. R. G(1). Courts are to evaluate the sufficiency of a complaint under standards established by SUPPLEMENTAL RULE G(2). FED. R. CIV. P. SUPP. R. G(8)(b)(ii). Accordingly, a complaint must "state sufficiently detailed facts to support a reasonable belief that the [G]overnment will be able to meet its burden of proof at trial." FED. R. CIV. P. SUPP. R. G(2)(f). Under § 983, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture[,]... [and] if the Government's theory ... is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(1) and (3). Thus, the Government bears the burden of stating a claim upon which relief can be granted, under 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, and must further establish, under SUPPLEMENTAL RULE G, the requisite nexus between the withdrawals that were allegedly structured and the Defendant Funds.

### III. ANALYSIS

In the instant motion, Claimant seeks dismissal of Government's complaint. (Doc. 9). However, before delving into the analysis of Claimant's arguments, it is necessary to understand

the statutory scheme regarding structuring and forfeiture. "'Structuring' occurs when individuals structure their financial transactions to avoid having them reported to the Government, which requires banks to report certain high-value transactions." *U.S. v. $79,650 Seized from Bank of America account ending in —8247, in the name of Afework*, No. 1:08cv1233(JCC), 2009 WL 331294, at *2 (E.D. Va. Feb. 9, 2009). In particular, "31 U.S.C. § 5324 ... forbids 'structur[ing] or assist[ing] in structuring ... any transaction with one or more domestic financial institutions' in an attempt to evade the bank reporting requirements of 31 U.S.C. § 5313(a)." *Id.* (alterations in original). "Section 5313 and related regulations require financial institutions to report currency transactions—deposits or withdrawals—in excess of $10,000 to the IRS." *Id.* (citing 31 U.S.C. § 5313(a); 31 C.F.R. § 103.22(a)). *See Ratzlaf v. United States*, 510 U.S. 135, 136 (1994). Further, federal law permits the Government to file a civil forfeiture action, pursuant to 18 U.S.C. § 981(a)(1), against funds that were the subject of structured banking transactions. 31 U.S.C. § 5317(c)(2) ("Any property involved in a violation of section 5313, 5316, or 5324 of this title ... and any property traceable to any such violation ... may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to [18 U.S.C. §] 981(a)(1)(A)"). In other words, money involved in or traceable to a structuring offense is forfeitable. 18 U.S.C. § 981(a)(1); 31 U.S.C. § 5317(c)(2).

Additionally, 18 U.S.C. § 984 provides the Government with another means of civil forfeiture of fungible property, such as currency. This statute loosens the traceability requirement of § 981:

> [(a)](2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

5

> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

18 U.S.C. § 984(a)(2)-(b). "Section 984, then, allows the forfeiture of fungible property with both a physical nexus to the tainted property—i.e., 'identical property found in the same place or account'—and a temporal nexus to the tainted property—'[n]o action ... may be commenced more than 1 year from the date of the offense.'" *Afework*, 2009 WL 331294, at *2.

Bearing in mind the statutory provisions of § 981 and § 984, the court turns to Claimant's Motion to Dismiss and for Return of Seized Funds. (Doc. 9). Claimant argues that the Government's complaint is due to be dismissed because (1) the complaint does not allege sufficient facts to support a reasonable belief that the government will be able to prove by a preponderance of the evidence that the Defendant Funds are subject to forfeiture, (2) the allegedly structured withdrawals are time barred by 18 U.S.C. § 984(b), and (3) the Defendant Funds are not substitute property subject to forfeiture. (Doc. 9-1 at 2). In its response to the Motion to Dismiss, the Government noted that it seeks to forfeit the Defendant Funds through the use of both § 981 and § 984. (Doc 11 at 10). For ease of analysis, the court will consider Claimant's arguments in terms of whether the Government may proceed with its forfeiture claim under both sections.

    A.    <u>**Sufficiency of Complaint**</u>

Claimant contends that the Government's complaint does not allege sufficient facts to prove by a preponderance of the evidence that the funds are forfeitable. (Doc. 9-1 at 2). To survive a Motion to Dismiss, the Government's complaint must contain "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at

trial." FED. R. CIV. P. SUPP. R. G(2)(f). In other words:

> To prevail at trial, the government must establish three elements: that [Claimant] violated 31 U.S.C. § 5324(a)(3) because (1) he had knowledge of the statutory and regulatory reporting requirements, (2) he acted to avoid those requirements, and (3) the subject currency was involved in or traceable to his violation of § 5324(a)(3).

*United States v. $438,040.65 in United States Currency,* No. 5:11-cv-984-CLS, Doc. 12 at 24 (N.D. Ala. 2012) (citing 31 U.S.C. § 5324(a)(3); 31 U.S.C. § 5317(c)(2)). The first two elements, including Claimant's knowledge of the reporting requirements and his acts to avoid the requirements, may be proven by circumstantial evidence.[3] *Id.* at 24-25. "Even though there is no binding precedent on point in the Eleventh Circuit," the court may consider the persuasive authority of "other circuit courts of appeal [that] have held that both elements... may be established by evidence of a pattern of withdrawals at or below the $10,000 reporting threshold." *Id.* at 25. One can infer from "the fact that [the defendant] chose to carry out his currency exchanges in a series of small transactions over a number of days rather than in a single transaction or several larger transactions, that he knew of the reporting requirements and was attempting to avoid them." *United States v. Nersesian*, 824 F.2d 1294, 1314-15 (2d Cir. 1987).

      Here, the complaint alleges that Claimant withdrew funds in $10,000.00 increments (doc. 1 at ¶ 11), that Claimant "admitted that he [was] aware that banks are required to complete CTRs for transactions over $10,000.00" (doc. 1 at ¶ 15), and "that he never conducts a currency transaction over $10,000.00" (doc. 1 at ¶ 16 ). Thus, the first element is satisfied. Further, the complaint contains allegations that over the course of five months, Claimant made withdrawals

---

[3] *See Ratzlaf*, 510 U.S. at 149 n.19 ("A jury may, of course, find the requisite knowledge on defendant's part by drawing reasonable inferences from the evidence of defendant's conduct.")

of $10,000.00 on thirteen separate occasions. (*Id.*) In fact, all withdrawals during the relevant time period were in the amount of $10,000.00. (*Id.* at ¶ 11). This pattern gives rise to the reasonable inference that Claimant knew of the reporting requirements and acted to avoid the requirements. As such, the second element is met.

Finally, the court must determine whether the complaint sufficiently alleges facts concerning the third element, involvement in the offense or traceability thereto under § 981. 18 U.S.C. § 983(c)(1) and (3)("[I]f the Government's theory is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense."). Thus, the question becomes whether the funds remaining in the account after the structuring activity have a substantial connection to the allegedly structured withdrawals.

> Section 5317 provides:
>
> Any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to [§] 981(a)(1)(A) of title 18, United States Code.

31 U.S.C. § 5317(c)(2). "The 'term "involved in" has consistently been interpreted broadly by courts to include any property involved in, used to commit, or used to facilitate the offense.'" *United States v. Seher*, 562 F.3d 1344, 1369 (11th Cir. 2009) (quoting *United States v. Varrone*, 554 F.3d 327, 331 (2d Cir. 2009)). "'Facilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance.'" *$438,040.65*, No. 5:11-cv-984-CLS, Doc. 12 at 31-32 (citing *United States v. Puche*, 350 F.3d 1137, 1153 (11th

Cir. 2003)). The question here is whether the funds that remained in the account after the withdrawals were made facilitated the structuring offense.

Arguably, the Defendant Funds made the structured withdrawals "less difficult or more or less free from obstruction or hindrance." *Id.* Under the alleged facts, Claimant made a number of large deposits, ranging from $20,000.00 to $50,000.00. (Doc. 1 at ¶ 11). On the same day that he made those large deposits, Claimant would also withdraw $10,000.00. *Id.* By engaging in this pattern, Claimant potentially masked the alleged structuring offenses. Because of the size of Claimant's deposits and the bank account's balance consistently having tens of thousands of dollars, Claimant arguably was able to structure withdrawals "more or less free from obstruction or hindrance." *$438,040.65*, No. 5:11-cv-984-CLS, Doc. 12 at 31-32 (citing *Puche*, 350 F.3d at 1153). In other words, the Government has alleged facts such that a jury could find that the funds within BBVA Compass Bank account number xxxx9194, including Defendant Funds remaining after the alleged structured withdrawals, acted as facilitators to the offense. Thus, the court finds that the Government's complaint alleges sufficient facts to suggest that the Government will be able to show by a preponderance of the evidence at trial that the Defendant Funds are forfeitable as property facilitating an offense in violation of § 5324.[4]

**B.      Forfeitability of Defendant Funds under § 984**

Since the court has established the sufficiency of the Government's complaint with respect to § 981, it will now consider Claimant's arguments concerning forfeiture under § 984. Section 984 permits the seizure of "any identical property found in the same place or account as

---

[4] Given that the balance in the subject account was $53,720.89 at the time of the last allegedly structured withdrawal (doc. 1 at ¶ 11), the court has concerns about the traceability of the funds that exceed this amount (*i.e.* the additional $29,553.62 in currency that was seized).

9

the property involved in the offense that is the basis for the forfeiture." 18 U.S.C. § 984(a)(2). However, forfeiture of substitute property is not proper under § 984 when the action is "commenced more than 1 year from the date of the offense." 18 U.S.C. § 984(b). In other words, when considering whether the Government can proceed under § 984, two factors must be met: (1) the seized funds must be identical property found in the same account as property involved in the offense and (2) an action under § 984 must be commenced within one year from the date of the offense. 18 U.S.C. § 984.

### 1. Whether the Defendant Funds are substitute fungible property under § 984.

As stated above, § 984 allows the Government to substitute fungible property that is not directly traceable to the structuring offense for property that was directly traceable to the offense. However, the Government can only do this when the substitute property is found in the same place or account as the property involved in the offense and when the substitute property is identical to the property involved in the offense. 18 U.S.C. § 984(a)(2).

The first step in determining whether the seized funds can be substituted under § 984 is to identify the property that is involved in the offense — that is, the property for which the seized funds are acting as a substitute. For the same reasons as noted in the previous section, the money in the account that remained after the withdrawals took place is involved in the structuring offense because it helped facilitate that offense.[5] *$438,040.65*, No. 5:11-cv-984-CLS, Doc. 12 at 31-32 (citing *Puche*, 350 F.3d at 1153).

---

[5] Claimant argues that the funds involved in the offense are those funds that were withdrawn, not those funds that remained in the account. While Claimant is correct that the withdrawn funds are undoubtedly involved in the alleged structuring offense, the remaining funds are also involved under the facilitation theory.

Having established that the funds remaining in the account were involved in the structuring offense, the court turns to whether the seized funds may be substitute property under § 984. First, the seized funds are identical property as the funds involved in the structuring offense — both are money. Further, the seized funds were taken from the same account as the money that was involved in the offense — account number xxxx9194 at BBVA Compass Bank. Accordingly, the seized funds can be substitute fungible property under § 984.

### 2. Whether the Government's forfeiture claim is time-barred by the one-year limit in § 984(b).

While § 984 allows the Government to seize property as a substitute for property involved in the structuring offense, there is a trade-off for that ability to substitute. The trade-off is a more restrictive limitations period than the five-year period that governs § 981. Pursuant to § 984, "[n]o action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense." 18 U.S.C. § 984(b). Here, the issue is what it means to "commence" an action. That is, whether an action is commenced by the filing of the lawsuit or whether it is commenced at the time the funds are seized.[6]

The Eleventh Circuit has not addressed the meaning of "commence" for purposes of § 984. *United States v. Funds in the amount of $193,773.00*, No. 8:11-CV-2062-T-30AEP, 2011 WL 6181424, at *3 (M.D. Fla. Dec. 13, 2011). However, "[t]he preeminent canon of statutory

---

[6] The Government argues that a motion to dismiss is not the appropriate time for the court to address this issue of timeliness. (Doc. 11 at 19-20 ("[T]he question of whether the Government will ultimately be able to use Section 984 is not dispositive at this stage of the litigation.") (citing *Afework*, 2009 WL 331294 at *5 and *United States v. Funds in the amount of $193,773.00*, 2011 WL 6181424, at *3 (M.D. Fla. Dec. 13, 2011)). However, the court finds the question to be a purely legal question, and therefore sees no reason not to consider whether Government's claim under § 984 is time barred. *See $8,221,877.16*, 330 F.3d at 161.

interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there."*Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)). Therefore, this court's inquiry "begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (citations omitted). As such, the words will be given their plain meaning unless otherwise defined. *Id.*; *see also In re Paschen*, 296 F.3d 1203, 1207 (11th Cir. 2002). Here, the issue is the meaning of "commence," which the Third Circuit noted is a term of art with only one unambiguous meaning: "A civil action is commenced by filing a complaint with the court." *$8,221,877.16*, 330 F.3d at 159 (citing Fed. R. Civ. P. 3); *see also McNeil v. United States*, 508 U.S. 106, 112 (1993) (holding that the words "institute," "begin," and "commence" must be read to require "invocation of the judicial process"); *Howard v. Lockheed-Georgia Co.*, 742 F.2d 612, 613 (11th Cir. 1984) ("As a general rule, an action is 'commenced' in federal court by the filing of a complaint."). Here, the court begins and ends its inquiry with the statutory language of § 984, and finds that the term "commence" is unambiguous. In this context, the court finds that it means invocation of the judicial process by filing a complaint. *$8,221,877.16*, 330 F.3d at 159. Thus, for purposes of interpreting the unambiguous term "commence" in § 984(b), this court recognizes the term's longstanding legal significance as requiring the Government to file a complaint.

      Notwithstanding the plain meaning of the word commence, the Government argues that a forfeiture case is commenced by the seizure of the funds. (Doc. 11 at 11). In support of this contention, it cites a House Committee Report, which provides that:

      [F]ungible property... is subject to forfeiture if it is identical to otherwise

>forfeitable property, is located or maintained in the same way as the original forfeitable property, and not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and *the time the forfeiture action was initiated by seizing the property or filing the complaint*, regardless of whether or not the fungible property was continually present or available between the time it became forfeitable and the time it was seized. (The time limitation is considered necessary to ensure that the property forfeited has a giving rise to the original action for forfeiture).

H. Rep. 102-28, 102d Congress (1991) at 47-48, 1991 WL 42201 (emphasis added).

While the court acknowledges that the committee report indicates that a forfeiture case can be commenced by the seizure of the funds, given the fact that the term commence as used in § 984(b) is unambiguous, it is not appropriate for the court to rely on legislative history to determine the meaning of the term commence. *Am. Bankers Ins. Group*, 408 F.3d at 1332. As a result, this court finds that for purposes of § 984, the term "commence" requires the Government to file a forfeiture complaint within one year of the underlying offense. In the instant case, the Government filed its complaint on January 23, 2013, more than one year from the last structuring offense on January 18, 2012. (Doc. 11 at ¶ 11). Consequently, § 984(b) bars the Government's forfeiture action under that provision because the Government failed to file a complaint within the one-year limit. Thus, Claimant's motion is due to be granted with respect to the Government's use of § 984.

**IV. CONCLUSION**

For the reasons stated herein, the undersigned recommends that Claimant's Motion to Dismiss and for the Return of Seized Funds (doc. 9) be granted in part and denied in part. The Government has stated a claim for forfeiture pursuant to 18 U.S.C. § 981, and as such, may proceed on that ground. However, because any attempt to use 18 U.S.C. § 984 would be time

barred, the Government should be prohibited from proceeding under that theory.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

**DONE**, this 2nd day of July, 2013

/s/ John E. Ott
**JOHN E. OTT**
Chief United States Magistrate Judge